Good morning. May it please the Court. My name is Michael Burke, and I represent Ms. Lopez. Ms. Lopez is asking that this Court reverse her convictions and remand for a new trial. And although her brief raises three grounds upon which she requests reversal, with the Court's permission, I would like to use the time I have allotted today to focus on one of those claims, which is her claim that the district court improperly prevented her from calling an expert witness on the issue of her affirmative defense of duress. She sought to call a psychological expert and made repeated requests of the Court that she be allowed to call that witness, and she was repeatedly denied that request on the grounds of relevance. The judge did give an instruction on duress, so we obviously thought the duress defense was properly raised. Yes, Your Honor, he did. And the duress issue was a central focus of closing argument in the case. I would like to focus for a minute on this Court's decision in Johnson from 1992, because I believe that Johnson is a source of mischief both in this case and in other cases subsequent to it. And I think that the most important aspect of Johnson that this Court must look at is really the factual grounding in that case. That was a case involving multiple defendants, all of whom had been involved in a drug conspiracy distribution ring. The defendants were females. And of those multiple defendants, one of them, Ms. Wood, had at trial, in support of a defense of duress, presented an expert psychological witness. And that witness testified. There was an instruction. And nevertheless, Ms. Wood was convicted. Two of the other defendants in that case sought at trial to call that psychological witness as well. And those requests were denied because the psychologist had not evaluated either of those defendants. One of those defendants, and this is where it becomes critical, was a Ms. Brecht. And Ms. Brecht's testimony at trial was that she had never personally been threatened, assaulted at all, that she was aware of others being threatened and assaulted. And that awareness affected her ability to deny the request that she engaged in criminal activity. It is in that context that the Court used a phrase that has become a bit of a problem certainly in this Court, in this case. And that is, the Court referred to Ms. Brecht's special subjective vulnerability to fear. And when I submit, when the Court was saying that, what the Court was saying is, you provided no evidence in this case that you yourself were ever threatened. That is a subjective argument. And the Court said, you could not have successively called the expert, a Dr. Phil Moore, based on that for two reasons. She had never evaluated you. And even if she could have testified on what she heard from you at trial, that testimony would have been subjective. So, counsel, what is the scope of what you wanted Dr. Karp to say? Is Dr. Karp going to say, I have examined Ms. Lopez and I believe that she has a bona fide fear? Is that what she's going to testify to? No, Your Honor. What she should be allowed to testify is, I have evaluated Ms. Lopez. She suffers from these certain psychological symptoms, one of which is PTSD. And then she should be able to testify generally about how those, about how PTSD affects victims of abuse in general. Now, the cases referred to, and I want to make a clarification here, the cases that we are dealing with here all refer to the term battered women syndrome. Dr. Karp was never allowed to testify. So I cannot stand before you and say she would testify that Ms. Lopez suffers from battered women. Was there a proffer about what she was going to say? Yes, there was, Your Honor. So we know what she was, at least what she said, she was going to say. And as I recall, both in the written record, in a written filing and orally, she was being called both to support the substantive defense of duress and to bolster the credibility of Ms. Lopez because the kinds of things that constitute the duress defense means that sometimes people say things that seem or sound counterintuitive. And the credibility of the witness is another reason for raising it. And as I read the written document, I forget what it's called, a motion or a notice or something, the purpose was to do both of those things. Well, and it would not be inappropriate for the expert to give testimony that would support the credibility of the witness. So that is not the limitation would be that the expert could not get up there and testify because 704B would prohibit it. She could not get up there and say, Ms. Lopez, because she suffered from PTSD, had a legitimate fear of, had a well-grounded fear of threat, or because she suffered from PTSD, she could not remove herself from the situation. That type of testimony would not have been permissible, but that type of testimony was not proffered. And so we submit that a proper reading of Johnson and the cases that are subsequent to Johnson, and we cite the Nuoye, excuse me, the Nuoye case from the district court, which the D.C. Circuit Court of Appeals, which, Your Honor, I know you're quite familiar with. Yes, it was reversed. From a very well-reasoned decision. But the district court's, the Court of Appeals' decision was very well-reasoned as well, and perhaps we certainly like it a little bit better. So if the Court has no other questions about this issue or the other issues we raised, I would just mention again, not to forget, that we do have a claim of prosecutorial misconduct. The government does not challenge the inappropriateness of the statement. But because we've been one statement of the one statement, but it does take issue with the making sense statements, right? That's correct, Judge Rawlinson. They do. And I would submit that standing alone, telling the jury in front, with Ms. Lopez on the stand, now, that's just a lie. But when I read that, I have to say I wasn't very impressed, because what Ms. Lopez had said was, he said he can't get guns, and the prosecutor sort of blurts out, that's a lie, and then explains, you knew he could get guns. So he's not accusing, or she's not accusing Ms. Lopez of lying. She's accusing Ms. Lopez of accepting a lie from Mr. Karaca. That is, that he was lying because she knew he could get guns. And therefore, the lie was Karaca's, not Lopez's. And I think it was probably inappropriate. I suspect it was sort of blurted out, but it was addressed. But it didn't really strike me as going to her credibility. Well, and, Your Honor, that's an interesting interpretation of it. That wasn't the interpretation I had, and I would submit that maybe the jurors would not have been able to parse it that closely either. With the Court's permission, I'll reserve the rest of my time for rebuttal. Of course. Good morning, Your Honors. I'm Erica McCallum. I'm an AUSA from the District of Arizona, and I'm representing the government here. Turning first to the question about the defendant's proposed expert, I think it's really important to keep in mind the defense theory of duress in this case, which was the duress occurred on the day of the offense. And if you look at page 55 and 57 of the defendant's closing argument, I think it's really clear the time frame they're talking about. Defense counsel says, when you're back in the jury room and you're trying to figure out if there was a present, immediate, or impending threat of death or duress, sorry, death or serious bodily injury, you'll remember the testimony of Lachey out on her mom's porch where Hector has decided we are getting the firearm today. And so the defense pointed to that interchange on the porch as the moment of which the defendant, or I'm sorry, Caracas Hector said, if we don't get this gun today, I'm going to come back and shoot up your house and shoot up your family. And then the defense says, and from that moment on, he was at her side through the purchase of the firearm. And so she had a well-grounded fear. She knew about his history of violence and his ability to get guns, and she had no opportunity to escape because he was with her through the purchase of the firearm. Let's see. And he tells her, this is on page 57 of the day three of the jury trial, and he tells her, we are getting a gun today. I don't care how it happens. I don't care what you think. You're doing this. And that's where we get to the third part, back in the jury room, no reasonable opportunity to escape because once he's decided today, we're getting the gun today, he's within striking distance of her the entire time. That theory does not require an expert to talk about battered women syndrome or either objective or subjective. I'd understood that the theory also related to her history with her father and that other things that she had seen throughout her life. Well, the defendant testified about that. Right. But why couldn't you have an expert testify about PTSD, about battered women syndrome, about something, and offer an expert opinion about what the profile generally looks like without talking about what she thinks Ms. Lopez's motivation was or wasn't? And I think that's absolutely appropriate expert testimony under the Ninth Circuit and other circuits' case law. The problem here was that the defendant was – the defense was essentially seeking to rebut the government's view of events, which was the duress occurred over a longer period of time. And so she had multiple opportunities, days to escape. I don't know how Dr. Karp could have possibly addressed, you know, whether this was – whether the duress occurred over a long period or over a short period. I didn't understand that Dr. Karp was being offered for that, and I didn't hear that today. Dr. Karp – I'm pausing because she provided an evaluation, which did not become a part of the court record but was discussed in the court record. And then with the motion for a new trial, Dr. Karp provided an affidavit saying, this is what I would have testified to. And I quoted portions of that in my answering brief. But essentially, Dr. Karp was prepared to look at the defendant's entire history, including her history with her stepfather, with the police, who she said never responded, to two boyfriends, including Karaka, who the defendant said had abused her and threatened her. And so, yes, Dr. Karp was prepared to talk about all of that history and to say, this is the reason that this defendant felt that she was unable to escape. Now, that's not what I heard from counsel today. So what I heard from counsel today was a little more circumscribed. I thought he said Dr. Karp would do two things. The first thing is that Dr. Karp would say, I have examined this young woman, and in my opinion, she suffers from PTSD. That might be attributable to these facts. And then was going to – and then would say, generally, people with PTSD don't always behave in ways that appear – behave in ways that appear to be rational to them, that might not appear to be rational to us, but offer an abstract explanation without saying this is what Lopez did. Now, that's a much more circumscribed proffer than what you've just – what you've just offered. Sure. And if I may have just a moment to grab my – Sure. And I'm going to focus on her affidavit because that was, in fact, part of the record. So – and this was at – it's document 169-1 in the court's record.   My – this is paragraph 6. My testimony would also have given the jury an opportunity to hear from the expert on trauma and how that may have influenced Lachey's feelings when she did not seek the help of the police, given her own trauma history of being sexually abused by her stepfather and the police never protecting her. And to go on, there are several other points. She was going to testify how Lachey's childhood abuse influenced her decision making, that the expert's testing of the defendant showed that she was suffering from the effects of domestic violence, although as an aside, the testing also showed that the defendant was malingering as to the extent of those effects. But that's not referenced in this affidavit. That she was suffering from the effects and how that informed her decisions. She was going to testify – What's the point that you're trying to make? That this is subjective testimony. Well, the trial judge would have been able to parse it and say, okay, if the trial judge had said, I agree that an expert is appropriate for two reasons, to support the duress defense and to bolster her credibility, now let's talk about what I'm going to let the expert talk about and what I'm not going to let the expert talk about. We can't assume that all of this stuff would have come in if the judge had accepted the defense argument that an expert was appropriate for these two purposes. Now let's talk about what part of it's coming in and what part of it's not coming in. I think the problem is that on appeal and based on that initial motion to include the expert testimony, which was before the expert's report, it does sound very objective. It sounds as though the expert would say she was diagnosed with this and that's consistent with this kind of behavior. Why was that? Because during the multiple hearings where the defense sought to include this testimony, for example, on January 12th – this is about a month pre-trial – the defense counsel said, as far as the escapability prong, calling an expert on domestic violence, we're going to call this expert on DV issues, and whether the defendant felt a reasonable opportunity to escape. So talking about what was going on in this defendant's mind. On February 6th – Was this affidavit from Dr. Karp, was this provided before or after the trial? That was provided after the trial. After the trial, this is the – she's an expert. She's not an expert in the rules of evidence. So for her to be able to say, well, this is what I was prepared to testify to, is not the same as Ms. Lopez or her counsel saying, well, I don't think she could go that far. And you certainly would have raised an objection to this that might have been properly limited. But it was excluded entirely. Yes. And we objected because the defense continued to say we're going to use this for a subjective purpose. For example, the defense said on February 16th, just a few days prior to trial, we're going to use the expert to talk about her serious history of domestic violence, which would have been cumulative, and that the expert relies on her evaluation and the disclosure in the case to explain her domestic violence consistent behavior, which sounds okay. But the defense also wanted the expert to come in and watch her testimony, which the court said she could do. And then said in its last-ditch effort to get that expert in without Dr. Karp, we're left to try to explain the nature of their relationship without the assistance of a psychologist. So talking about the nature of the relationship between the defendant and Karaka is subjective. So, no, the government never said she can only come in to say this is how domestic violence victims behave. And the court didn't do that, and it was because the defense continued to try to push the bubble. And, in addition, there's – Which is, in my experience, is typically what defenses do. Sure. That's why you're there, is to push back. The problem here is that it got excluded entirely. Right. So instead of getting to sort of a middle ground where they don't get everything they want and you don't get everything you want, Dr. Karp was just excluded completely. Well, ultimately, I think this was harmless because there was a duress jury instruction. The defendant testified to all of this herself. And yet every time she said anything that went to the duress instruction, the prosecutor said, that doesn't make any sense. That doesn't make any sense. And one of the reasons that the defense wanted an expert was to say that sometimes things that people suffering from PTSD do may not make sense and may seem counterintuitive. And this expert will help explain that so that you can judge her credibility as a person suffering from PTSD. So the exclusion of the expert was only exacerbated by the comments of the prosecutor. Your Honor, you've raised two issues, the first of which – oh, great, now I just lost my train of thought. Give me one second here. Oh, I'm sorry. Last point on the duress, again, is to emphasize according to the defense theory, the duress all occurred on the final day. And so, again, the expert testimony wouldn't have existed. Now, turning to the prosecutor's statements about that doesn't make sense, I really would like to parse those out just a little bit because I don't think you can just say, hey, the government said a whole bunch of times that doesn't make sense and so ruin the defendant's credibility. The defendant made a number of inconsistent statements during her testimony. And like any witness, the government is able to test that credibility and point out inconsistencies. So the first time the government said the defendant didn't make sense is when the defendant said, Caraca kept coming back to tell me he wanted a gun and I kept saying, I can't do it, I'm on probation, I can't, I don't want to. And the government said, does that make sense? In other words, explain this inconsistency where if somebody keeps coming back to an unwilling participant, then they're going to go to somebody else because an unwilling participant is going to call the police. But I wanted to ask you in the context of a battered woman syndrome expert testimony, does the expert normally testify about global abuse of the victim or is it generally pinpointed toward the person who has victimized the witness? I just found it curious that there was going to be testimony globally about how she's been abused in various venues. Generally, I thought battered woman syndrome testimony was focused on the person, generally the person who was the abuser in the proceedings at issue. Your Honor, you're absolutely correct. And that's in the Johnson case where the question of a well-grounded fear looks at whether or not the vulnerability was produced by someone else. And here, of course, the expert was going to talk about the stepfather, the police, and the other boyfriend as well as Caracas. So, yes, this was, oh, I apologize, really broad testimony beyond the scope of what is normally acceptable. And I apologize for exceeding my time. Thank you. Thank you, Counsel Roboto. Very briefly, to address your question, Judge Rawlinson, you have to look at the context of each individual case. And in most battered women syndrome cases, you have often, in fact, it usually comes up in the context of a self-defense case involving the batterer. It is now seen more broadly or more frequently in duress cases. But the testimony would have been that Ms. Lopez suffers from PTSD, and that PTSD was tied to multiple sources. So the testimony from Dr. Carp would have been. Is that how it was presented to the district court, that rather than battered women syndrome, it was PTSD? Is that how the ruling was presented to the district court? Yes, Your Honor. There was, in fact, in the initial notice, I don't know that the term battered women syndrome was even used. Could you point me to the record? Because this is a very important point for me. Because I could see the district court properly exercising its discretion to say that, you know, we're not going to go from birth to the present day with all of the stressors that this defendant has encountered under a battered women syndrome or duress from this particular person. But if it's a PTSD type of expert, then I think maybe that's a little closer case. So could you point me specifically where in the record the court was given the proffer? Yes, Your Honor. That would be at ER 1263 through 1265, and that was the notice from defense counsel of their intent to call. 1263. Hold on a second. And I would direct the court's attention to especially ER 1265, the final page where it talks about testimony regarding the specific research and documented behaviors of victims of domestic violence will assist the jury in determining whether there was a reasonable opportunity to avoid or escape the threatened harm. If the court has no further questions, I've exceeded my time. All right. It appears not. Thank you. All right. The case just argued is submitted for a decision by the court. Thank you to both counsel for your helpful arguments in this case. Your next case on calendar for argument is United States v. Espinosa-Valdez.
judges: Rawlinson, Bybee, Friedman